(October 4, 1911.)

## BENJAMIN MOYSES and CHARLES B. SMITH, Respondents, v. HENRY HEWITT, Jr., Appellant.

[118 Pac. 839.]

REAL ESTATE—OPTION TO PURCHASE—ASSIGNMENT OF—DUTY AND RIGHT OF OWNER.

(Syllabus by the court.)

1. Where Dr. H. owns certain real estate and gives G. an option to purchase, which he does not exercise, and thereafter Dr. H. sells and conveys said real estate to R., and R. thereafter sells and conveys said real estate to H., and H. gives G. an option to purchase said land, and G. thereafter assigns said option to Y., and thereafter G. attempts to convey the title to said land by deed to M. & S. and to assign said option to them, and M. & S. attempt to procure title to said land from H. under said option, and Y. assigns said option to H., *held*, that M. & S. had no right or authority to exercise said option and to compel H. to convey said title to them, as both the legal and the equitable title were in H.

2. Since H. had given the option to G. and G. has assigned his interest in said option to Y. and Y. thereafter had assigned the same to H., *held*, that H. was under no obligation to convey the said land to M. & S. upon their offering to perform the conditions of said option.

APPEAL from the District Court of Canyon County, the case having been commenced in Elmore County and transferred to Canyon County for trial. Hon. Ed. L. Bryan, Judge.

Action to quiet title to certain real estate situated in Elmore county. Judgment for plaintiffs. *Reversed.*

Richards & Haga, for Appellant.

Where a person has declined to loan another money with which to take up an option on land and take a mortgage on the land as security for the loan, but pays the money direct

to the owner and takes a warranty deed to himself and gives the former holder of the expired option an agreement to convey to him the land upon payment of certain sums, the deed cannot be declared a mortgage, but the legal title passes with the deed, and the other party must recover, if at all, upon the agreement or option to sell. (*Baird v. Baird*, 48 Colo. 506, 111 Pac. 79; *Sullivan v. Woods*, 5 Ariz. 196, 50 Pac. 113; *Conner v. Clapp*, 37 Wash. 299, 79 Pac. 929; *Blumberg v. Beekman*, 121 Mich. 647, 80 N. W. 710; *Wallace v. Johnstone*, 129 U. S. 58, 9 Sup. Ct. 243, 32 L. ed. 619; *Morrison v. Jones*, 31 Mont. 154, 77 Pac. 507; *Reed v. Parker*, 33 Wash. 107, 74 Pac. 61; *Glendenning v. Johnston*, 33 Wis. 347; *Emery v. Lowe*, 140 Cal. 379, 73 Pac. 981; *Hinchmann v. Cook*, 45 Wash. 490, 88 Pac. 931.)

Cavanah & Blake, for Respondents.

The findings and decree of the court in which it is decreed that respondents are the owners of the premises in dispute are supported by the evidence. And under the agreement between Garrett and appellant, Garrett or his assigns are entitled to a decree requiring appellant to execute a deed to them upon a tender of the amount due appellant. (*Crane v. Cheney*, 77 Kan. 815, 91 Pac. 67.)

"It is a settled doctrine of equity that the form of a transaction will never preclude inquiry into its real nature, but in all cases the intention of the parties must control, irrespective of the form." (27 Cyc. 991–993, and cases cited.)

"The plain intention of our law is that, when the parties are once in court, all conflicting claims shall be settled between them arising out of the subject matter involved in the issues." (*Burke Land etc. Co. v. Wells, Fargo & Co.*, 7 Ida. 42–56, 60 Pac. 87.)

An unrecorded instrument purporting to convey title is void as to a subsequent purchaser. (*Swank v. Sweetwater Irr. & Power Co.*, 15 Ida. 353, 98 Pac. 297.)

SULLIVAN, J.—This is an action to quiet title, and the complaint is of the usual form in that kind of an action. The

plaintiffs allege that they are now, and for a long time prior to the commencement of this suit have been, in the possession and entitled to the real estate described in the complaint, it being an eighty-five acre tract known as the Race Track and Fair Grounds at Mountainhome; that the plaintiffs claim title in fee to said premises and that the defendants claim an interest and estate therein adverse to said plaintiffs, and allege that said defendants are without any rights whatever, and that they have not any estate, right, title or interest whatever in said land or premises, and pray that the defendants be required to set forth the nature of their claims and for judgment and a decree adjudging that they have no estate or interest whatever in and to said land, and that the title of the plaintiffs be declared a good and valid title.

The answer of the defendant, Henry Hewitt, Jr., denies that the plaintiffs now are or ever have been entitled to the possession of said land; admits that the plaintiffs are now in possession thereof, but denies that they were entitled to the possession, and avers the fact to be that, contrary to law and in violation of the rights of defendant, on or about the —— day of January, 1909, they broke into and entered upon said premises, and have continued to hold possession thereof and have continued to trespass thereon; admits that he claims an interest and estate in said premises adverse to said plaintiffs and each of them, and avers that he has for more than a year prior to the commencement of this suit been the owner thereof and of the fee thereto, and during such period has been and now is entitled to the possession thereof, and that this defendant and his predecessors in interest for about twenty years last past have been the owners of said premises and of the whole thereof, and prays for judgment and for his costs against the respondents.

At the opening of the trial the action was dismissed as to Henry Hewitt, Sr., and the trial proceeded against Henry Hewitt, Jr.

Upon the issues thus made the cause was tried by the court without a jury and findings of fact were made as follows:

During the spring of 1908, one John H. Garrett secured an option from one S. C. Rutan to purchase the premises mentioned and described in the complaint, for $7,600, and at said time he paid to said Rutan the sum of $2,000 upon the purchase price. On or about July 9, 1908, said John Garrett, the immediate predecessor in interest of the plaintiffs, purchased said premises from the said Rutan for a valuable consideration, and took title thereto in the name of the defendant, Henry Hewitt, Jr., under an agreement between the said Garrett and the said Hewitt, entered into about the time of the execution and delivery of said deed from Rutan to Hewitt, whereby it was agreed that in consideration of said Hewitt's advancing and loaning the sum of $5,758.50 to the said Garrett to be applied on said purchase price of said premises and the payment by said Garrett, or his assigns, to the said Hewitt, within a period of two years from July 10, 1908, said sum of money together with the further sum of $3,088, and any money the said Hewitt might loan the said Garrett after July 10, 1908, and interest on all of said sums at the rate of ten per cent per annum, the title to said premises to be taken in the name of said Hewitt for the said Garrett and to be held by said Hewitt as security for the payment of said sums of money within two years from July 10, 1908, by the said Garrett or his assigns. The court further found that a certain part of said money had been paid to said Hewitt by one Colthorp, which sum was paid for the redemption of certain horses and cattle referred to in said option agreement between Garrett and Hewitt; that upon the payment of said sum there was left a balance of $7,694.56 due and owing to the said Hewitt under said agreement, and interest thereon from March 20, 1909; that said Garrett had been in the possession of said premises for about two years prior to July 9, 1908, under an option to purchase the same from one Harper, the immediate predecessor in interest of said Rutan, and continued in the actual possession of said premises until about October 28, 1908, when the said Garrett and his wife, by warranty deed, for a valuable consideration, conveyed said premises to the plaintiffs and at the same time assigned and transferred to said

plaintiffs all the right and privilege of said Garrett to redeem the said premises from the said Hewitt under said agreement aforesaid; that said plaintiffs entered into actual possession of said premises under said deed, and have ever since said time had possession and control of said premises; that said Hewitt has not at any time been in the possession of said premises, and that there is now due and owing to said defendant Hewitt under the aforesaid agreement the sum of $7,694.56; that on March 30, 1909, plaintiffs tendered and offered to pay to said Hewitt a sufficient sum of money to cover the payment of the entire amount due said Hewitt under said agreement with Garrett; that Hewitt refused to accept the same or any part thereof; that at the beginning of the trial plaintiffs tendered in writing in open court the entire amount due Hewitt under said agreement and that said defendant refused to accept the same; and the court made conclusions of law in conformity with said findings of fact and entered a decree and judgment to the effect that the plaintiffs have judgment as prayed for in their complaint, and they are thereby declared and adjudged to be the true and lawful owners of said premises, and quieting the title thereto in the plaintiffs, and perpetually enjoining said Hewitt from setting up any claim thereto, and directing a conveyance to be made to the plaintiffs therefor, and also adjudging that if the defendant refused to make such conveyance, that the clerk of said court may execute the same.

A motion for a new trial was overruled by the court, and this appeal is from the judgment and from the order denying a new trial.

Numerous errors are assigned, and among them the insufficiency of the evidence to justify the findings.

The following facts appear from the evidence: One John E. Harper, of Chicago, Ill., in 1902, owned the real estate in controversy, and John H. Garrett made a contract with him to purchase said land and paid $2,000 on said contract and failed to pay the balance of $5,600. In the early summer of 1906, Harper wanted a settlement and the balance of his money and Garrett attempted to make an arrangement with the appel-

lant, Henry Hewitt, Jr., whereby Hewitt would advance sufficient money to pay the balance due Harper, being about $5,700, but on a submission of the abstract of title to Hewitt, he found that it would be necessary for Harper to bring an action to quiet title before he could make a good and sufficient deed thereto to Hewitt. A suit was brought to quiet title and consumed practically two years' time before final judgment was entered. Along in the early spring of 1908, Garrett having failed to take up said option, Harper sold said property to F. C. Rutan of Chicago, who went to Mountainhome and demanded immediate settlement on the deferred payments, and Garrett gave him two bills of acceptance, one for $2,000 and one for $5,600. The one for $2,000 was paid but the second one was not paid. Garrett again applied to Hewitt for assistance and was told to send on the abstract of title and if found that the title was all right, he would purchase the property of Rutan and take the title himself and would give Garrett a contract back whereby he should have two years in which to repay him the money he would pay for it, including other loans. It seems that Hewitt finally paid Rutan and took the deed to the property, and sometime about a month thereafter Hewitt was in Mountainhome and Garrett requested him to give him a written statement as to how much he was to pay him in order to get title to the land from him. This statement was prepared by Garrett himself and signed by Henry Hewitt, Jr. Said statement is as follows:

COPY OF LETTER AND AGREEMENT.

"Mountainhome, Idaho, July 10, 1908.

"J. H. Garrett, Esq.

"You owe me $500.—interest of Mt. Home Electric Co. bonds, also owe Seymore H. Bell $400.—balance due him on Electric Co. stock purchased from him by you. You also owe Bell and myself $480.—taxes on Light Plant which we paid for you. I have paid $5758.50 on your ranch, and have warranty deed for same, for which ranch shall be holding for all the above mentioned accounts aggregating $7178.50.

"I have today bought 50 head of registered short horn cattle, including all bulls from E. J. Colthorp, and paid for same $1148.—, also about 80 head of horses including all the heavy draft and range horses sold by you to Colthorp. Included also in this 80 head are six stallions and all the standard bred mares formerly owned by you, all of which are now on my 85 acre farm, or belong there.

"In addition to the purchase price of these horses I have paid $520.—to the First National Bank of Mt. Home, who in some manner had a lien on them. You owe me also fees for examining abstracts, Bank Exchange, etc., $40.—, making a total of $8846.50, as follows:

| | |
|---|---:|
| Taxes | $ 480.00 |
| Bell | 400.00 |
| Coupons | 500.00 |
| Cattle | 1148.00 |
| Horses (Bank) | 520.00 |
| Farm | 5758.50 |
| Exchange, Att'ys. fees, etc | 40.00 |
| Total | $8846.50 |

"If you pay me all the above mentioned sum within two years from this date with interest at the rate of ten per cent per annum, also pay any taxes or expenses in keeping and maintaining said stock, or any money I may loan you after this date, I will deed all of the above land and chattels to you or your assigns, provided however that I shall not be held responsible for death of any of the stock or for loss by fire.

"If you at any time desire the cattle or horses released separately, you can do so by repaying the amount due thereon with 12% interest.

[Signed]     "HENRY HEWITT, Jr."

"In event you sell the horses, you are to pay $1369.—which amount I am to be charged with, this amount going to E. J. Colthorp.

[Signed]     "J. H. GARRETT."

Said statement bears date of July 10, 1908, but it appears from the evidence that it was dated back and that it was prepared and signed about a month after that date. The deed from Rutan to Hewitt was dated July 9, 1908, and Hewitt testified on the trial that he went to Mountainhome about a month after that date when this option given to Garrett was prepared and signed.

On the 14th of October, 1908, Garrett gave to John R. Young the following assignment of his said option or right to purchase said tract of land from Hewitt:

"For and in consideration of the sum of One Dollar, and other valuable considerations, to me in hand paid by John R. Young, of Seattle, Wash., I hereby assign to said J. R. Young, all my right, title and interest in and to that certain 85 acre farm better known and described as follows, to wit:

"The East Half of the Southeast quarter of section 25, and commencing at the southeast corner of the northeast quarter of section 25, running thence due west 80 rods; thence due north 10 rods; thence due east 80 rods; thence due south 10 rods to the place of beginning, all in township Three south, Range six east, Boise Meridian, Elmore county, Idaho.

"Also that certain herd of cattle and horses, all of said property and chattels being the same as described in a letter dated July 10, 1908, signed by Henry Hewitt, Jr., a copy of which is hereunto attached and made a part thereof, and I herewith instruct and authorize the said Henry Hewitt, Jr., his heirs, executors, administrators or assigns, to deed, convey and deliver unto the said John R. Young the said real estate and chattels, upon payment by said Young to said Hewitt of the amount of money specified in said letter.

"Witness my hand and seal, at Mountain Home, Idaho, this 14th day of October, 1908.

[Signed]    "J. H. GARRETT.    (Seal)

"Witnessed.

"LOUIS I. HERZ.

"B. L. WILLIAMS."

Thereafter Young transferred his assignment from Garrett to the appellant Hewitt, which assignment is as follows:

"For and in consideration of One Dollar and other valuable considerations, I hereby transfer and assign to Henry Hewitt, Jr., of Tacoma, all my right, title and interest in the above option to purchase above lands excepting the cattle therefrom. I affirm that I have Seventy-five Hundred Dollars that was loaned to Garrett for above int. reserving my rights to collect other securities and notes I have.

"J. R. YOUNG."

It seems that the respondents had had some business with Garrett and met him first in the spring of 1907, and in the latter part of October they claim to have purchased the real estate in question with other property from Garrett and the deed from Garrett to them of said racetrack property is dated October 29, 1908. It seems that during the negotiations for the purchase of the land in question Garrett exhibited to the respondents a letter-press copy of the option letter of Hewitt dated July 10, 1908, and delivered said copy to them on October 29, 1908. It appears that the respondents, Smith and Moyses, reside at Seattle, state of Washington, and Henry Hewitt, Jr., resides at Tacoma in said state; that on their return to Seattle from Mountainhome, after receiving said deed dated October 29th, they went to Tacoma to see Hewitt about the racetrack ranch, and according to their testimony, Hewitt told them that he would be very glad to turn the ranch over to them—all that he wanted was his money back, but at that time he was not in a position to say what his claim was against the property, as his son John kept his books for him and he could not determine the matter. Two or three weeks thereafter they again went to see Hewitt and he was then unable to give them the data, and he repeated a second time that he was perfectly willing to give them a deed if he got his money back. Hewitt wanted to know what authority they had in the matter, and they showed him the deed from Garrett to them and a copy of the option from him to Garrett. They went a third time to see Hewitt and he told them that his lawyer had told him that they had no title to that property, and that Garrett had assigned his option to a man by the name of Young and that he (Hewitt) had an assignment from this man Young,

and that on no account, under his attorney's advice, could he surrender the property. Respondent Smith testified that that was the first time he had heard of the assignment by Garrett to Young; that they had no knowledge of that assignment until Hewitt told them of it. It seems that thereafter, in March, 1909, respondents with their attorney and the cashier of a bank in Tacoma, tendered Hewitt $10,000 in gold on said option, which tender Hewitt refused to accept.

On substantially those facts the court made the findings above mentioned.

Summarized, said facts are as follows: Doctor Harper, of Chicago, owned said racetrack in 1902, and he gave Garrett an option to purchase the same, which option Garrett never exercised. Harper thereafter sold said land to Rutan, of Chicago. Rutan endeavored to get Garrett to take up said option, which he failed to do, but was instrumental in procuring Hewitt, the appellant, to purchase said land from Rutan, and he thereafter gave Garrett an option to purchase the same, and, as the record shows, through stress of circumstances, Garrett assigned his said option to one Young on October 14, 1908. On October 29, 1908, Garrett attempted to convey said land to the respondents. It is thus made to appear that Garrett never had any title to said land whatever. He had nothing to convey further than his right of option, which he assigned to Young prior to the time he gave said deed to said premises to the respondents. It is thus made to appear that Garrett had no interest in said option at the time he executed said deed to respondents and attempted to assign said option to them.

We will now refer to the circumstances under which the assignment of said option was made to Young. B. L. Williams, a witness for the defendant, who had been in the employ of the Great Western Beet Sugar Co. under Garrett, as an accounting clerk, from November 20, 1907, until March, 1909, testified in regard to said transfer, in part, as follows: "I think it was generally known to the office of the Great Western Beet Sugar Company that the assignment by Garrett to Young had been made. There was a strenuous circum-

stance connected with certain notes that this party, J. R.
Young, held; he paid in some $6,000 or $7,000 to the company
for certain lands he hadn't got; he had received a few notes
given by other parties as collateral to hold until such time
as he was fixed up; among them was certain notes amounting
to, I. think, $1,600 belonging to one Parker Ellis, making us
much trouble at that time, and Mr. Dockery and I agreed with
him if he would deliver these notes to us to relieve the situa-
tion that we would see that he got security from Mr. Garrett
that would be equally satisfactory to him. The only thing we
could find was the assignment of whatever interest Garrett
might have had in this ranch, and the only paper we had in
the office was this tissue copy, it wasn't an instrument that
could be recorded, I would not presume, so this assignment
was made out in this way and he was to present it to Mr.
Hewitt, and on account of the circumstances connected with
that I thought he had to be fixed up. The whole thing was
pretty generally known, not only in the office but outside the
office. Parker Ellis came to Mountainhome and with him an
officer with a requisition for Mr. Garrett and Mr. Garrett's
whereabouts were unknown at the time.''

This evidence is uncontradicted, and clearly shows that
Young gave a substantial consideration for said option, and
from all of the above-recited facts it is clear that Garrett had
no interest whatever in said land nor in said option at the
time he attempted to convey the same to appellants.

The rule of law applicable to those facts is clear, and is to
the effect that Garrett never had any title to said land, and
the only right he had was an option which he had, for a
valuable consideration, assigned to Young, and Young had as-
signed the same to Hewitt, in whom was the legal title. Under
the facts and the law, if Hewitt had had notice of the assign-
ment by Garrett to Young of Garrett's option to purchase said
land, he would have been liable to Young had he conveyed
it to anyone but Young or Young's assigns during the con-
tinuance of said option, and after Young had assigned his
interest in said option to Hewitt, the respondents had no right

to a conveyance from Hewitt of said premises under and by virtue of the deed from Garrett to them, as Garrett had no interest in said matter at the time he executed said deed, he having assigned all of his interest in said option to Young fifteen days before he attempted to convey to respondents.

Some stress is laid upon the fact by counsel for respondents that at the first and second time respondents interviewed Hewitt, Hewitt did not tell them of Garrett's assignment of his option to Young, and that he did not do so until the third interview with him. That, however, makes no difference as to the decision of this case, for if Hewitt had agreed to convey to them upon their paying Garrett's indebtedness to him, and was notified of the Young assignment before he conveyed to them, it was his duty then to refuse to convey, for by such assignment Young or his assignee was entitled to exercise the option and no one else.

Our conclusion therefore is that Hewitt was under no obligation to convey said land to respondents upon their offering or tendering the amount due him under the Garrett option. The above views render it unnecessary for us to decide or pass upon other questions raised on this appeal, as under the law applied to the facts, in no view of the case would the respondents be entitled to enforce against Hewitt the Garrett option.

The judgment must be *reversed* and the cause remanded to the trial court, with instructions to make findings of fact, conclusions of law and to enter judgment in conformity with the views expressed in this opinion. Costs are awarded to appellant.

Stewart, C. J., and Ailshie, J., concur.

Petition for rehearing denied.